SUSIE BIGBEAR WHITE, APPELLEE, v. FIRST NATIONAL BANK, DEFENDANT: JOHN P. LINCH ET AL., APPELLANTS.

FILED JANUARY 17, 1920. No. 20655.

1. **Appeal:** HARMLESS ERROR. "On appeal, an error or defect in the pleadings or proceedings, when not prejudicial to appellant, is not a ground of reversal." *Ward v. Holliday,* 87 Neb. 607.

2. **Fraud:** SUFFICIENCY OF EVIDENCE. Evidence examined, and *held* sufficient to sustain the verdict.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Brome & Ramsey* and *W. T. Thompson,* for appellants.

*Smith, Schall & Howell, contra.*

DEAN, J.

Susie Bigbear White and her husband, Leo White, are Winnebago Indians residing on the reservation in Thurston county. She sued the First National Bank of Pender, H. D. Hancock, assistant cashier, E. G. Hancock and John P. Linch jointly in the district court for Douglas county to recover $14,316.95 obtained from her, as alleged, by the fraud and conspiracy of defendants in the purchase from her of a tract of land and in the sale to her of an undivided one-eighth interest in a concern that was represented as being actively and profitably engaged in the manufacture and sale of lightning rods. It was alleged that defendants conspired together to cheat and defraud her; that she relied on their false and fraudulent statements and representations, believing them to be true, and that she was thereby damaged in the amount of the sum sued for. Before the trial began the suit was dismissed as to the bank. The jury returned a verdict against John P. Linch and E. G. Hancock for $5,644.62 and for $5,983.24 against E. G. Hancock and H. D. Hancock. From a judgment rendered thereon the Hancocks and Linch appealed.

Linch answered separately, and alleged that the lightning rod property was worth all that plaintiff paid for it. He denied that he took any part in the purchase of the land or of having any interest therein. The Hancocks are brothers. They filed a joint answer denying generally the allegations of fraud. They denied participation in the sale of the lightning rod property and denied that Linch took any part in the purchase of the land.

The record is voluminous, and we cannot review all of it. We deem it sufficient to point out only a few of the prominent features that were developed at the trial. Substantially these facts appear: E. G. Hancock is a real estate agent and dealer in Indian and other lands. H. D. Hancock is assisant cashier of a bank at Pender and is related to Linch by marriage. When Susie made her investment Linch was engaged in an enterprise having to

do with placing lightning rods on the market. On May 29, 1915, E. G. Hancock obtained a 60-day option from Susie and her husband for the purchase of 160 acres of her land for $19,500. H. D. Hancock witnessed and took the acknowledgment of the grantors. Subsequently a sale contract, in form, was executed that named E. G. Hancock as second party. It was signed only by Susie and her husband. Hancock's name does not appear. It provided generally that a mortgage lien on the premises was to be paid by E. G. Hancock and the release of a certain life estate in the land, namely, that of Mrs. Armell, plaintiff's mother was to be obtained by him. This contract was witnessed by defendant H. D. Hancock. A deed was subsequently deposited in the bank by Susie and a receipt therefor was given to her by E. A. Wiltse, president of the bank. It may be noted that this deed was not finally delivered to Hancock, but to another, in which the name of Pearsall appears as grantee, to whom Hancock had already sold the land for $24,800. Susie testified that it was not her intention at any time to sell the land to E. G. Hancock, and that the contract and deed were signed to enable him to pay off the mortgage and buy in the life estate to the end that a loan might be obtained on her land. She testified that she did not consent to the sale "until he made us sell it to him." There is some confusion in her testimony on this point, but the jury doubtless concluded, and there is evidence to support it, that Hancock so controlled Susie and Leo that they were powerless in his hands, and at his will they did his bidding. During the time negotiations were pending E. G. Hancock professed a friendly solicitude for both, and from the evidence the jury would be justified in believing that he was apparently acting for them in a fiduciary capacity. Leo White was reluctant about signing the contract, but was finally persuaded to sign when E. G. Hancock handed him $20 for doing so. At the trial Susie wore a ring with a setting of brilliant hue but of trifling value. The ring, encased in a pretentious plush box, is in evidence. Susie

testified that Hancock presented it to her and explained that he did so because Leo had told him of complaints that she had made about him to the effect that he was not treating her right and that he had compelled her to pay too much interest. That H. D. Hancock was interested in the land transaction with his brother appears from his own and other testimony.

Respecting the sale of the interest in the lightning rod enterprise to Susie it appears that E. G. Hancock introduced Linch to Leo White in December, 1915, and told Leo in Linch's presence that Linch was "looking for a good man to work for him." Linch then offered Leo employment in the lightning rod plant at Omaha, and offered him $75 for the first month and $100 a month thereafter. Before Linch and Hancock left, Leo told Linch that he would accept the offer and begin work in February. In January following Leo received two letters from Linch, written at Omaha, wherein he referred to Mr. Hancock as having recommended him very highly; and that Leo's work would be "to stay here in the office. As far as work goes, you can do it all in two hours a day." He told Leo to bring his wife along, and to let him know by return mail the date of arrival and he would meet them at the train. The next day Linch wrote him again urging haste. On January 14 Leo began work, and shortly thereafter his wife came to Omaha, and within ten days $5,000 of her money was paid over to Linch by E. G. Hancock. The bill of sale from Linch to Susie Bigbear White was dated January 24, 1916, and recites as having been sold to Susie "the following goods and chattels, to wit: Undivided one-eighth interest in the American Lightning Rod Company, including everything pertaining thereto, except stock, and the stock to be paid for at the purchase price thereof." Without elaborate discussion we conclude that there is evidence from which the jury were justified in the belief that all of the property in which Susie bought an "undivided one-eighth interest" was worth considerably less than $1,000. Susie's account of

104 Neb.—10

the final scene in the purchase of the lightning rod property follows: She testified that she and Leo and Linch left Omaha for Pender on January 24, 1916, the day of the settlement, and that the party went to E. G. Hancock's office. Upon arrival there Linch informed Hancock that Susie wanted to "buy in" on the lightning rod enterprise. She said that Linch asked Hancock if a settlement could not be made that day, to which Hancock replied that it could "if she wants to buy in down there, if she wants to invest her money in something that is worth while." She said that when Hancock displayed such ready willingness for settlement she requested him to give her money to her and let her settle with Linch, but that he refused, and Linch obtained her money from him. This did not close the lightning rod incident. Susie testified that soon afterwards Linch, but without success, tried to induce her to buy an undivided one-fourth part in his concern for $2,500. In about two weeks after Linch obtained Susie's money Leo was laid off without pay and he returned to his home on the reservation.

Defendants argue that there is a misjoinder of parties and of causes of action. Section 7713, Rev. St. 1913, provides: "The court, in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." We do not think the substantial rights of the parties were prejudicially affected in the respects noted. The evidence amply supports the verdict against the respective parties as returned by the jury. Even though separate trials had been granted, we do not see how the result could have been different. *Ward v. Holliday,* 87 Neb. 607.

The judgment of the district court is

AFFIRMED.